Thomas J. Eastmond – State Bar No. 211591
Ryan S. Riddles – State Bar No. 298745
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
teastmond@goeforlaw.com
rriddles@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Counsel for Riley's American
Heritage Farms and James Patrick Riley

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| RILEY'S AMERICAN HERITAGE FARMS, a California corporation; JAMES PATRICK RILEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES ELSASSER, an individual; STEVEN LLANUSA, an individual; HILARY LACONTE, an individual; BETH BINGHAM, an individual; NANCY TRESER OSGOOD, an individual; DAVID S. NEMER, an individual; ANN O'CONNOR, an individual; and BRENDA HAMLETT, an individual,<br><br>Defendants. | Case No. 5:18-cv-02185-KK<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **VIOLATION OF CIVIL RIGHTS – FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983)**<br>2. **CONSPIRACY TO VIOLATE CIVIL RIGHTS – FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983)**<br>3. **INJUNCTIVE RELIEF (42 U.S.C. § 1983)** |

Plaintiffs Riley's American Heritage Farms, a California corporation doing business as "Colonial Chesterfield at Riley's Farm" and "Riley's Farm" ("Riley's Farm" or "the Farm"), and James Patrick Riley, an individual ("Mr. Riley"), for their First Amended Complaint herein alleges as follows:

1

**JURISDICTION, VENUE AND PARTIES**

1. This is an action brought under 42 U.S.C. §§ 1983 and 1985 to recover damages against the defendants named herein (collectively, "Defendants") for violation of Plaintiffs' right to freedom of speech, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

2. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff Riley's Farm is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California, with its principal place of business in Oak Glen, San Bernardino County, California.

4. Plaintiff James Patrick Riley is, and at all times relevant hereto was, an individual resident of Oak Glen, San Bernardino County, California.

5. All or a substantial part of the events giving rise to the instant claims occurred within the County of Los Angeles, California. In addition, all of the defendants named herein are residents of this judicial district. Venue is therefore proper under 28 U.S.C. § 1391(b).

6. Defendant James Elsasser ("Elsasser" or the "Superintendent") is, and at all times relevant hereto was, the Superintendent of the Claremont Unified School District (the "District"), and a resident of the County of Orange, California.

7. Defendant Steven Llanusa ("Llanusa") is and at all times relevant hereto was the President of the District's governing Board of Education (the "Board"), and a resident of the County of Los Angeles, California.

8. Defendant Hilary LaConte ("LaConte") is and at all times relevant hereto was the Vice President of the Board, and a resident of the County of Los Angeles, California.

9. Defendant Beth Bingham ("Bingham") is and at all times relevant hereto was the Clerk of the Board, and a resident of the County of Los Angeles, California.

10. Defendant Nancy Treser Osgood is and at all times relevant hereto was a member of the Board, and a resident of the County of Los Angeles, California.

11. Defendant David S. Nemer ("Nemer") is and at all times relevant hereto was a member of the Board, and a resident of the County of Los Angeles, California.

12. Defendant Ann O'Connor ("O'Connor") is and at all times relevant hereto was the Principal of Chaparral Elementary School in the District, and a resident of Los Angeles County, California.

13. Defendant Brenda Hamlett ("Hamlett") is and at all times relevant hereto was the Principal of Sumner Danbury Elementary School in the District, and a resident of Los Angeles County, California.

14. The Defendants named herein may be referenced collectively "Defendants." As set forth in greater detail below, Defendants are sued in their individual capacities, and also (in connection with Plaintiffs' request for injunctive relief) in their official capacities.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

15. Riley's Farm operates an agritourism business, which it describes as a "living history farm," in the foothills of the San Bernardino Mountains, in the rural community of Oak Glen, San Bernardino County. Its varied business activities include seasonal "U-Pick" apple and other fruit picking, produce sales, pie, pastry, cider, jam and other food sales, historical and other novelty item sales, a seasonal pumpkin patch, a restaurant and tavern, dinner theater events, hosting of corporate, family and associational events, summer "day camp" activities, film and commercial location shooting, historically-themed activities such as tomahawk throwing, candle dipping and archery, and school field trips.

16. Depending on the season, Riley's Farm employs between 28 and 163 full- and part-time workers of diverse backgrounds, with the latter high number being reached during the spring "high season" for school field trips. Riley's Farm and its management and staff often have close, long-lasting personal and professional relationships.

17. The category of school field trips accounts for approximately half of Riley's Farm's revenues, generating around $2,100,000 in gross revenue in a typical recent year out of total Farm revenues of approximately $4,200,000. Riley's Farm has been hosting school field trips since 2001. The trips have proven highly popular, and until this year, patronage has grown steadily to its current level.

18. Riley's Farm's field trip programs include immersive presentations focused on the American Revolution, the Civil War, American colonial farm life, the California Gold Rush, and the pioneer homesteading history of Oak Glen and the San Gorgonio Pass region.

19. Of these presentations, the American Revolution presentation is the most popular. A large area of the Riley's Farm premises is landscaped and themed as "Colonial Chesterfield," portraying a New Hampshire village of the 1770s. A post-and-beam colonial tavern, orchards, a village green, stone walls, a storehouse, and a pillory furnish an authentic period environment. Students are divided into small groups (each typically accompanied by a teacher, aide or volunteer chaperone) and spend the day rotating among "stations" where "living historians" in period dress provide interactive presentations on different aspects of the history of the American Revolution and its time period.

20. The exact number of stations on any given field trip will typically vary according to the time a school group has available. Educators occasionally request that specific aspects of American history be included or emphasized, and Riley's Farm's staff generally is able to accommodate those requests.

21. A typical American Revolution field trip might include the following stations:
- Admiralty Court
- Stamp Act
- Drill
- Quartering Act
- Quill and Ink
- Etiquette
- Games

22. In the "Admiralty Court" station, to take one example, student volunteers are put on "trial" for smuggling, with the presentation, containing a healthy dose of comic relief, highlighting the unfairness of the widely despised British admiralty courts (where the same official effectively served as prosecutor, judge and jury) contrasted with the important rights under the present Constitution of trial by jury before an impartial tribunal. A true copy of Riley's

1  Farm's "The Admiralty Court" presentation script is attached hereto as **Exhibit 1**.

2      23.   In another popular station, living historians instruct students in 18th century military drill on the village green, learning the authentic "manual of arms" with sticks for muskets and enthusiastic shouts of "BOOM" for musket volleys.  The students may receive a "soldier's ration" of authentically tough hardtack, cheese, and fruit.  Toward the end of the day, the (now well-trained) small groups may join for a reenactment of a skirmish between "Minutemen" and "Redcoats."

      24.   After the skirmish, a presenter (in the character of Patrick Henry or another Revolutionary figure) will typically offer a closing speech, with the aim of summing up the lessons and larger meaning of the Revolutionary period. A true copy of a typical closing speech is attached hereto as **Exhibit 2**, and is excerpted as follows:

> "[P]retty soon you get to go on those buses and cars to that wonderful sweet place called home – where there's food on the table, friends next door, and all the comforts of modern life. But I would like you to ponder for just a moment, all the Americans throughout time, from Bunker Hill to Normandy and beyond…who never got that chance to go home…because they gave their lives…so that we may live in a nation where we can vote, we can be tried by a jury of our peers, where we can speak our minds without fear, we can bear arms, where we can worship as we choose. You live in *that* nation."

> "…Then I would hope and pray you remember, despite her faults, and she does have many, the country that was given to you.  You still live in a very free nation.  They say that liberty is a chain…

> "…and you are the next link in that chain."

      25.   Riley's Farm works diligently to present an authentic historical experience in both the content of the presentations and the period detail of the costumes and implements, and strives to avoid anachronism.  The presentations are continuously evolving, with input from educators, formally trained historians, the historical reenactor community, and the public.  Riley's Farm's staff and management are extremely careful – perhaps even more careful than many full-time educators – to avoid "editorializing," or inserting commentary on contemporary political or cultural issues into their presentations.

      26.   The District has been a regular patron of Riley's Farm field trips since 2001, with patronage increasing from two field trips in 2001 to 12 field trips in 2017.  Over the past five

years, this existing commercial relationship has generated roughly ten field trips per year.

27. To Plaintiffs' knowledge, the District does not issue any regulations or policies governing public commentary or social media use by independent contractors providing services to the District, or their owners, employees or management.

28. Riley's Farm maintains an Internet web site at rileysfarm.com, a Facebook page, and a Twitter account, @rileysfarm76.

29. Plaintiff James Patrick Riley is one of the principal shareholders of Riley's Farm. Mr. Riley has his own Facebook page and Twitter account, which he uses (the latter account is currently inactive) to keep in touch with a wide circle of family, friends and acquaintances he has accumulated over the years. He also, on occasion, comments on those accounts on matters of public concern, including matters of politics, religion, and social relations.

30. Some of his social media posts are carefully and thoughtfully crafted, and quite long. Others, as may commonly be the case on social media, can be shorter, more one-dimensional, more sharply worded and passionate. In the particular context of Twitter – especially when an interlocutor becomes sufficiently carried away by indignation at Mr. Riley's generally conservative politics to disparage his age, ethnicity, and gender, frequently with liberal torrents of four-lettered vitriol – his tone may fall even farther below George Will/Hendrik Hertzberg levels.

31. He has made social media comments, in that latter context, on the following subjects, among others:

- The irony of adult entertainer Stormy Daniels being arrested for indecent contact of patrons during a strip club performance, concurrently with her accusing President Trump of sexual immorality ("What is this country coming to if a girl can't even use her bosoms to smack customers and then sue the president for unwanted sexual advances?");
- The widespread perception that Massachusetts Senator and potential 2020 presidential candidate Elizabeth Warren played up an insubstantial and possibly nonexistent Native American ethnic background for personal and political

      advantage, in a clumsy act of "cultural appropriation" by a quintessentially plain-vanilla New Englander, which Mr. Riley ridiculed with a send-up of how that sort of person might try to mimic stereotyped Native American folkways;

- An unfavorable comparison of Democratic Senator Kirsten Gillibrand to an ice sculpture at one of her fundraisers;

- A wry observation that "I just realized we may have been the last generation born with only two genders"; and

- An expression of contempt for "white supremacy," and what Mr. Riley deemed inordinate fear of it, as being little more significant than "3 guys who live in two different counties in Arkansas," whereas "black supremacy," as exemplified by Louis Farrakhan and sometimes given voice and sympathy by more mainstream public figures, purportedly warrants greater concern.

32. All of the above comments (the "Commentary") address matters of widespread public concern.

33. All of Mr. Riley's comments on the above matters were made on his personal social media accounts. None of them appeared on Riley's Farm's accounts or web site. Mr. Riley did not reference the District, Riley's Farm, school field trips, or anything with any connection to the District in the above comments. The District did not commission, pay for, endorse, express approval of, or otherwise associate itself with Mr. Riley's speech on these matters, expressed in the above social media posts. No reasonable reader of those posts could possibly interpret them as representing the views of the District or the Defendants.

34. Plaintiffs are not District policymakers, supervisors, official government spokespersons, public safety employees, primary or secondary school teachers, or any other category of person that courts have classified as "quintessentially public servants" potentially subject to heightened governmental restraints on speech that may reasonably be perceived as communicating a government agency's own views. (See, e.g., *McEvoy v. Spencer*, 124 F.3d 92,

103 (2d Cir. 1997); *Locurto v. Giuliani*, 447 F.3d 159, 178-179 (2d Cir. 2006).)[1]

35. In or about August 2018, a private person designated herein as "Conspirator A," who Plaintiffs are informed and believe is not an employee or official of the District, was angered by the Commentary. Plaintiffs are currently working to confirm the identity of Conspirator A, and may seek leave of this Court to name him or her as an additional defendant when his or her identity is confirmed.

36. Conspirator A formed a combination with one or more other private persons, who agreed to act in concert to induce public agencies – in particular, the school districts who patronize Riley's Farm's field trip business, including the District – to retaliate against Plaintiffs for Mr. Riley's First Amendment-protected expression.

37. Subsequently, Defendants O'Connor and Hamlett joined Conspirator A, and/or others, and agreed to inflict a wrong against and/or injury upon Plaintiffs by retaliating against them. Defendants O'Connor and Hamlett committed overt acts in furtherance of a conspiracy to retaliate against Plaintiffs for Mr. Riley's First Amendment-protected expression by prohibiting teachers at Chaparral and Sumner Danbury Elementary Schools, respectively, from patronizing Riley's Farm for school field trips.

38. Conspirator A committed additional overt acts in furtherance of the above-referenced conspiracy by intentionally interfering with Riley's Farm's existing commercial relationships with the District and other school districts, by seeking to induce schools within the District, the District as a whole, and other school districts to retaliate against Plaintiffs.

39. On September 7, 2018, the District's Assistant Superintendent, Julie Olesniewicz, Ed.D ("Olesniewicz") sent an e-mail to the Superintendent, Elsasser, which read as follows:

> "Hi Jim,
> Principals are asking for some guidance on Riley's, Jenny [Jennifer Adams, the principal of Oakmont Elementary School] especially. Apple Farm is part of Oakmont [Elementary School's] Biomes, and all of the farms are associated with a Riley, so they are panicking. I will add it to Cabinet for Monday."

---

[1] The Second Circuit Court of Appeals has gone perhaps the farthest in tolerating governmental restrictions on speech of public employees and/or independent contractors. Ninth Circuit authorities are less permissive. (See, e.g., *Godwin v. Rogue Valley Youth Corr. Facility*, 656 Fed. Appx. 874, 875-877 (9th Cir. 2016).)

40. "Cabinet" is a regular meeting attended by Superintendent Elsasser, Assistant Superintendent Olesniewicz, and other District administrators.

41. Elsasser immediately responded with the following e-mail to Olesniewicz:

"Okay, we'll come up with some guidelines during Monday's Cabinet. In the meantime, do you think it would be a good idea to send a quick e-mail to the elementary principals asking each of them to tell you if they have plans to go this year and, if so, to which property?"

42. A true copy of the e-mail chain containing this exchange is attached hereto as **Exhibit 3**.

43. Three minutes later, at 9:31 a.m., Olesniewicz sent an e-mail to all of the District's principals, asking if they had any "grade levels planning on going to Riley's Farm or another Riley's owned property this year," and if so, which property. "We are trying to give you all some guidance on this," Olesniewicz wrote. A true copy of this e-mail is attached hereto as **Exhibit 4**.

44. Over the next few hours, various District principals responded to Olesniewicz's 9:31 a.m. e-mail. Defendant Hamlett responded immediately (at 9:32 a.m.), stating "We cancelled our trips." In response to a response from Rria Cruz-Soto, the principal of Mountain View Elementary School that a class from that school had booked a Riley's Farm field trip, Olesniewicz responded "Whoever at MV [i.e. Mountain View] booked the trip needs to cancel." A true copy of these e-mail exchanges is attached hereto as **Exhibit 5**.

45. On Monday, September 10, 2018, at 1:14 p.m., Olesniewicz sent another e-mail to the District's principals, a true copy of which is attached hereto as **Exhibit 6**. This e-mail read as follows:

"Hello,
We discussed Riley's Farm today in Cabinet. We have researched as much as we possibly can, and the only farm in Oak Glen that we can directly link to James Patrick Riley is the actual Riley's Farm. There are many other farms up there that are owned and run by other members of the Riley family, but don't seem to be linked to him. **Therefore, we are asking that no CUSD school attend Riley's Farm field trips.** However, other farms such as Los Rios Rancho and Stone Soup Farm should be fine as it does not appear that James Patrick Riley is involved in those farms."

(Emphasis added.)

9

46. Elsasser, therefore, knew of, authorized, endorsed and ratified the decisions of Defendants O'Connor and Hamlett, as principals of the elementary schools they supervised, to prohibit teachers from patronizing Riley's Farm field trips, and in fact issued a District-wide policy that no District school may attend Riley's Farm field trips.

47. On September 25, 2018, Plaintiffs caused a letter to be sent to the District, the Superintendent, and all of the members of the Board, alerting them that retaliatory action had been taken against Riley's Farm based on Mr. Riley's expressed opinions, setting forth the legal authorities that demonstrate the illegality of this action, and demanding that the action be remedied.

48. On October 2, 2018, counsel for the District replied, by its counsel, with a vituperative letter fully endorsing the decision of Defendants O'Connor and Hamlett (and potentially other administrators of other District schools, whom Plaintiffs may seek leave of this Court to name as additional defendants upon confirmation that they took similar actions to those of Defendants O'Connor and Hamlett) to withdraw the schools' longtime patronage of Riley's Farm. A true copy of this October 2, 2018 letter is attached hereto as **Exhibit 7**.

49. The October 2, 2018 letter expressly cited the Commentary referenced in paragraph 31, above, and asserted that the District was within its rights to withdraw its patronage from Riley's Farm based on their content: "Nothing in the First Amendment obligates the District to continue doing business with any individual or organization that makes public statements which are inimical to the District's educational mission…The District has…no obligation to expose children to an individual who engages in these crude and tasteless comments."

50. In the October 2, 2018 letter, the District insinuated (without evidence, and indeed contrary to evidence) that its action was necessary to "secure and protect" students from "discrimination and harassment" and to avoid "expos[ing] them to inappropriate sexist or racist attitudes" or "sexually explicit, indecent or lewd speech."

51. Notably, the District did not assert (nor could it assert, consistent with obligations of honesty) that any of the Commentary, or any comments resembling it, or addressing the same

subjects, was ever expressed, or was likely to be expressed, at field trips at Riley's Farm. Students are not, in fact, exposed to "discrimination and harassment, "inappropriate sexist or racist attitudes," or "sexually explicit, indecent or lewd speech" on Riley's Farm field trips. District schoolteachers have attended these field trips for nearly two decades, and (to Plaintiffs' knowledge) have never expressed a single complaint about any such matters.

52. Notably, the October 2, 2018 letter contained the following false statement of fact:

> "Initially, the statement that the District 'issued a policy forbidding teachers from taking field trips to Riley's Farm is false. The District neither 'issued' nor has such a policy. After the District became aware of racist, sexist, and homophobic statements published in social media by the proprietor of Riley's Farm, individual schools decided whether to sponsor field trips to Riley's Farm during the 2018-2019 school year."

53. As demonstrated by the facts alleged in paragraphs 39 through 46, above, and particularly as shown in black and white on Exhibit 6, this statement was blatantly, baldly false. The District had, in fact, issued a policy forbidding teachers from taking field trips to Riley's Farm. Plaintiffs are informed and believe, and on that basis allege, that Defendants Llanusa, LaConte, Bingham, Osgood, Nemer, and Elsasser knew this statement to be false, and willfully, knowingly and maliciously approved its being sent, by Defendants' then counsel Atkinson, Andelson, Loya, Ruud & Romo, to counsel for Plaintiffs, in an effort to conceal the true facts. Subsequent to their filing of their original Complaint herein, Plaintiffs obtained copies of the e-mails attached as Exhibits 3 through 6, and discovered the true facts.

54. By the October 2, 2018 letter, which Plaintiffs are informed and believe and on that basis allege was approved by Defendants Llanusa, LaConte, Bingham, Osgood, and Nemer, who constitute the District's final policymaking authority, the District ratified, approved and endorsed the unconstitutional actions of Elsasser, O'Connor, and Hamlett.

55. In the alternative, Plaintiffs allege that the Superintendent had final policymaking authority for the District, and ratified the actions of Defendants O'Connor and Hamlett, in fact expanding on their action to issue a District-wide ban on Riley's Farm field trips, as set forth in Exhibit 6.

///

**FIRST CLAIM FOR RELIEF**

**(Violation of the First Amendment – Retaliation – 42 U.S.C. § 1983 – Damages)**

*(Against All Defendants)*

56. Plaintiffs re-allege and incorporate by this reference the allegations contained in Paragraphs 1 through 54, or in the alternative Paragraphs 1 through 53 and 55.

57. The First Amendment to the United States Constitution prohibits abridgement of the freedom of speech, and the First Amendment is incorporated against the states by the Fourteenth Amendment. Persons violating the First Amendment under color of law are liable at law and in equity under 42 U.S.C. section 1983.

58. Defendants, as to this claim for relief, are sued in their individual capacities.

59. With certain exceptions not applicable here, public agencies may not take adverse action against citizens, including public employees and independent contractors with pre-existing commercial relationships with the agencies, based on speech or expression by those persons which the agencies or their officials or employees disagree with.

60. In or about September 2018, Defendants Elsasser, O'Connor and Hamlett, acting under color of state law, violated Plaintiffs' clearly established rights under the First Amendment by retaliating against Mr. Riley's constitutionally protected speech.

61. Defendants Llanusa, LaConte, Bingham, Osgood, and Nemer joined the above-referenced Defendants in violating Plaintiffs' clearly established rights by ratifying, endorsing and approving, on or about October 2, 2018, the above-referenced Defendants' acts in violation of Plaintiffs' clearly established rights. Such defendants thereby established a policy to violate those rights in that manner.

62. No applicable legal precedent could justify the Defendants' retaliation against Plaintiffs based on expression of opinions by Mr. Riley, on matters of significant and widespread public concern, that (1) did not reference the District, Riley's Farm, school field trips, or anything with any connection to the District; (2) was not commissioned, paid for, endorsed, approved, or otherwise associated with the District; (3) was made on Mr. Riley's own time, on his own social media accounts; and which (4) no reasonable reader of those posts could possibly

interpret as representing the views of the District or the Defendants. As set forth above, Plaintiffs are not District policymakers, supervisors, official government spokespersons, public safety employees, primary or secondary school teachers, or any other category of person that courts have classified as "quintessentially public servants" potentially subject to heightened governmental restraints on speech that may reasonably be perceived as communicating a government agency's own views. While legitimate government concerns to avoid disruption to provision of public services may, in some circumstances, outweigh the interest of an employee or public contractor in freedom of speech, the "more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." (See *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 930 (9th Cir. 2004).) Under no applicable legal precedent could the District assert that retaliating against Mr. Riley's speech was actually necessary to avoid disruption to its ability to provide public services sufficient to justify the infringement of Plaintiffs' First Amendment rights.

63. In acting as alleged herein, the Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiffs' clearly established and constitutionally protected rights, justifying an award of punitive damages in an amount sufficient to punish the Defendants and discourage others from engaging in similar gross abuse of the public trust and governmental power.

64. As a direct and proximate result of Defendants' actions, as described in this Complaint, Plaintiffs have suffered injury, loss and damage, including but not limited to the following:

- Cancellation by District schools of field trips booked for the 2018-2019 school year;
- Lost future revenues and/or profits due to the District's unlawful blacklisting of Riley's Farm, notwithstanding that Plaintiffs are informed and believe that District schoolteachers, if not restrained by the District and/or otherwise discouraged by the District's unlawful actions, would continue the pre-existing commercial relationship with Riley's Farm, in an amount subject to proof at trial

1         but not less than $125,000;

2   • Reputational damage to Mr. Riley and Riley's Farm, in an amount subject to proof at trial, in excess of $125,000; and

4   • Mental and emotional distress, mortification, worry, anguish, and embarrassment, including the effects of anxiety over Riley's Farm's future ability to continue to provide livelihoods for its loyal longtime employees with whom Mr. Riley and Riley's Farm management have significant personal relationships and feel a sense of obligation to, in an amount subject to proof at trial, not less than $800,000.

## SECOND CLAIM FOR RELIEF

### (Violation of the First Amendment – Conspiracy – 42 U.S.C. § 1983 – Damages)

*(Against Elsasser, Llanusa, LaConte, Bingham, Osgood, Nemer, O'Connor, and Hamlett)*

65. Plaintiffs re-allege and incorporate by this reference the allegations contained in Paragraphs 1 through 54, or in the alternative Paragraphs 1 through 53 and 55, together with Paragraphs 56 through 64.

66. As set forth above, Conspirator A, other private persons, O'Connor, Hamlett, Elsasser, Llanusa, LaConte, Bingham, Osgood, and Nemer conspired and agreed together to inflict injury upon Plaintiffs, by procuring and causing official governmental retaliation against them for Mr. Riley's First Amendment-protected expression on matters of public concern.

67. Overt acts taken in furtherance of this conspiracy include, but are not limited to, (1) Conspirator A's successful efforts to induce one or more of the Defendants to end Riley's Farm's pre-existing commercial relationship with the District; and (2) the Defendants' unlawful cessation of patronage of Riley's Farm for school field trips based on unconstitutional conditions.

68. As set forth above, Conspirator A has also undertaken to induce other school districts to take similar unlawful retaliatory action against Riley's Farm. To date, at least four other school districts have indicated that they intend to follow the District's example.

69. Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants have taken further overt action in furtherance of the conspiracy, by contacting officials at other school districts and encouraging them to join the District in retaliating against

Riley's Farm. The Defendants' actions in furtherance of the conspiracy have a contagious effect, magnifying the impact of the conspiracy well beyond the boundaries of the District itself.

70. The overt acts of the Defendants, Conspirator A, and potentially other participants in the conspiracy (which Plaintiffs may seek leave of Court to add as defendants, as may be appropriate) have resulted in damage to Plaintiffs, which continues to mount. Riley's Farm has lost a significant amount of its field trip business as of the date of the filing of this Complaint. Riley's Farm reasonably anticipates that (as the spring field trip high season approaches, and more school districts get around to formally approving field trips and the associated payments), it may have lost from 33% to 50% of its $2,100,000 field trip business.

71. As a direct and proximate result of Defendants' actions in furtherance of the above-referenced conspiracy, as described in this Complaint, Plaintiffs have suffered injury, including but not limited to:

- Cancellation by District schools of field trips booked for the 2018-2019 school year;
- Lost future revenues and/or profits due to the District's unlawful blacklisting of Riley's Farm, notwithstanding that Plaintiffs are informed and believe that District schoolteachers, if not restrained by the District and/or otherwise discouraged by the District's unlawful actions, would continue the pre-existing commercial relationship with Riley's Farm, in an amount subject to proof at trial but not less than $125,000;
- Reputational damage to Mr. Riley and Riley's Farm, in an amount subject to proof at trial, in excess of $125,000;
- Mental and emotional distress, mortification, anguish, and embarrassment, including the effects of anxiety over Riley's Farm's future ability to continue to provide livelihoods for its loyal longtime employees with whom Mr. Riley and Riley's Farm management have significant personal relationships, in an amount subject to proof at trial, not less than $800,000;
- Lost future revenues and/or profits from lost business with other school districts,

1 lost as a direct and proximate result of the general conspiracy in which the
2 Defendants, together with Conspirator A, are participants, in a sum reflecting up
3 to the value of 50% of Riley's Farm's reasonably foreseeable total future school
4 field trip business absent Defendants' unlawful action, in an amount subject to
5 proof but likely in excess of $9,875,000.

72. In acting as alleged herein, the Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiffs' clearly established and constitutionally protected rights, justifying an award of punitive damages in an amount sufficient to punish the Defendants and discourage others from engaging in similar gross abuse of the public trust and governmental power.

## THIRD CLAIM FOR RELIEF
## (Injunctive Relief – 42 U.S.C. § 1983)
### (Against All Defendants)

73. Plaintiffs re-allege and incorporate by this reference the allegations contained in Paragraphs 1 through 54, or in the alternative Paragraphs 1 through 53 and 55.

74. This claim for relief is alleged against Defendants in their official capacities.

75. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, loss, damage in that Plaintiffs are informed and believes and thereon alleges that Defendants' policy to prohibit District schools from patronizing Riley's Farm for field trips, as Plaintiffs are informed and believe and on that basis allege certain schoolteachers wish to continue to do, is continuing.

76. Plaintiffs allege, in the alternative to the allegations contained in Paragraphs Paragraphs 1 through 54, or in the alternative Paragraphs 1 through 53 and 55, together with Paragraphs 56 through 72, that Plaintiffs have no adequate or speedy remedy at law for the conduct of Defendants described above. This action for injunctive relief is Plaintiffs' only means of securing prospective relief, preventing further and continuing retaliation against Plaintiffs based on the Commentary and/or future First Amendment-protected commentary by one or more of Plaintiffs.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**On the First Claim for Relief**

*Against Elsasser, Llanusa, LaConte, Bingham, Osgood, Nemer, O'Connor, and Hamlett, in their individual capacities*:

1. For compensatory damages, in an amount subject to proof at trial, in excess of $1,050,000;
2. For punitive damages, in an amount to be determined according to proof at trial, sufficient to punish Defendants and make an example of them for their abuse of the public trust and state power, not exceeding ten times Plaintiffs' general damages;
3. For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;
4. For costs of suit incurred in this action; and
5. For such other and further relief as the Court deems proper.

**On the Second Claim for Relief**

*Against Elsasser, Llanusa, LaConte, Bingham, Osgood, Nemer, O'Connor, and Hamlett, in their individual capacities*:

1. For compensatory damages, in an amount subject to proof at trial, in excess of $10,975,000;
2. For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;
3. For costs of suit incurred in this action;
4. For punitive damages, in an amount subject to proof at trial to be sufficient to punish Defendants and make an example of them, not exceeding ten times Plaintiffs' general damages, and
5. For such other and further relief as the Court deems proper.

**On the Third Claim for Relief**

*Against Defendants in their official capacities:*

1. For a preliminary and permanent injunction enjoining and restraining Elsasser, Llanusa, LaConte, Bingham, Osgood, and Nemer, and their successors in office, from

        maintaining, enforcing or adopting any policy, custom or practice to forbid or discourage patronage of Riley's Farm by District schools or employees, for field trips or any other purpose, or of any other independent contractor with a commercial relationship with the District as of the date of the filing of this Complaint, due to private commentary by any of its owners, officials or employees, not expressed in the immediate context of field trip presentations, about matters of public concern.

2. For a preliminary and permanent injunction enjoining and restraining Elsasser, Llanusa, LaConte, Bingham, Osgood, and Nemer, and their successors in office, from encouraging or permitting employees or officials of the District to withdraw patronage from Riley's Farm, or any other independent contractor with a commercial relationship with the District as of the date of the filing of this Complaint, due to private commentary by any of its owners, officials or employees, not expressed in the immediate context of field trip presentations, about matters of public concern.

3. For a preliminary and permanent injunction enjoining and restraining O'Connor and Hamlett, and their successors as principals of Chaparral and Sumner Danbury Elementary Schools (respectively) from maintaining, enforcing or adopting any policy, custom or practice to forbid or discourage patronage of Riley's Farm by any teachers or employees of the schools they supervise as principals, for field trips or any other purpose, or of any other independent contractor with a commercial relationship with the District as of the date of the filing of this Complaint, due to private commentary by any of its owners, officials or employees, not expressed in the immediate context of field trip presentations, about matters of public concern.

4. For a preliminary and permanent injunction requiring Defendants to issue, on behalf of the District, a formal apology to Plaintiffs for violating their First Amendment rights, acknowledge their wrongdoing, and acknowledge the District's obligation to respect freedom of speech, in a suitable form to be prepared by counsel for Plaintiffs, in order to limit, insofar as it is possible, further reputational harm to Plaintiffs;

5. For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

6. For costs of suit incurred in this action; and

7. For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury.

Date: March 15, 2019                  **GOE & FORSYTHE, LLP**

By: /s/*Thomas J. Eastmond*
     Thomas J. Eastmond
     Counsel for Plaintiffs Riley's American
     Heritage Farms and James Patrick Riley

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **FIRST AMENDED COMPLAINT FOR: 1. VIOLATION OF CIVIL RIGHTS – FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983); 2. CONSPIRACY TO VIOLATE CIVIL RIGHTS – FIRST AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) and 3. INJUNCTIVE RELIEF (42 U.S.C. § 1983)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 15, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas J Eastmond** teastmond@goeforlaw.com
- **Golnar Jabbari Fozi**
  gfozi@meyersfozi.com,dmodafferi@meyersfozi.com,kwright@meyersfozi.com,cweston@meyersfozi.com,npontious@meyersfozi.com,jdwork@meyersfozi.com,lklinger@meyersfozi.com
- **Daniel Stephen Modafferi**
  dmodafferi@meyersfozi.com,nmeyers@meyersfozi.com,gfozi@meyersfozi.com,cweston@meyersfozi.com,kwright@meyersfozi.com,jdwork@meyersfozi.com,lklinger@meyersfozi.com,twiseman@meyersfozi.com
- **Ryan Scott Riddles** rriddles@goeforlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) March 15, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 15, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- The Honorable Kenly Kiya Kato, USDC, 3rd Floor, 3470 Twelfth Street, Riverside, CA 92501-3801

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 15, 2019 | Kerry A. Murphy | /s/Kerry A. Murphy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |