1   Golnar J. Fozi (Cal. Bar No. 167674)
    Daniel S. Modafferi (Cal. Bar No. 294510)
2   Meyers Fozi & Dwork, LLP
    1808 Aston Avenue, Suite 100
3   Carlsbad, California  92008
    Tel: (760) 444-0039; Fax: (760) 444-0130
4   Email:   gfozi@meyersfozi.com
             dmodafferi@meyersfozi.com
5
    Attorneys for Defendants,
6   James Elsasser, Steven Llanusa, Hilary
    LaConte, Beth Bingham, Nancy Treser
7   Osgood, David Nemer, Ann O'Connor, and
    Brenda Hamlett
8

9                    **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

11

12   RILEY'S AMERICAN HERITAGE          **Case No.:  5:18-cv-02185-JGB-SHK**
     FARMS; and JAMES PATRICK           **Assigned to: Hon. Jesus G. Bernal**
13   RILEY,
                                        **MEMORANDUM OF POINTS AND**
14              Plaintiffs,             **AUTHORITIES IN SUPPORT OF**
                                        **DEFENDANTS JAMES ELSASSER,**
15        v.                            **ANN O'CONNOR, AND BRENDA**
                                        **HAMLETT'S MOTION FOR**
16   CLAREMONT UNIFIED SCHOOL           **SUMMARY JUDGMENT OR, IN**
     DISTRICT; JAMES ELSASSER;          **THE ALTERNATIVE, PARTIAL**
17   STEVEN LLANUSA; HILARY             **SUMMARY JUDGMENT**
     LACONTE; BETH BINGHAM;
18   NANCY TRESER OSGOOD; DAVID         **[F.R.C.P. 56]**
     S. NEMER; ANN O'CONNOR; and
19   BRENDA HAMLETT,                    **Date:    July 6, 2020**
                                        **Time:    9:00 a.m.**
20              Defendants.            **Crtrm: 1**

21                                      **Complaint Filed:  October 12, 2018**
22                                      **Trial Date:  September 29, 2020**
23

24

25

26

27

28

                                   1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. 3

I.      INTRODUCTION .................................................................... 4

II.     SUMMARY OF UNDISPUTED MATERIAL FACTS ............................ 5

      A.    The Parties ................................................................... 5

      B.    Background on CUSD Field Trips ...................................... 5

      C.    James Patrick Riley's Online Posts Lead to a Controversy Online .... 6

      D.    Parents Complain to CUSD about Riley's Farm Field Trips ............ 7

      E.    CUSD Schools Cancel Riley's Farm Field Trips in Response to Parent Complaints ............................................................. 9

      F.    Plaintiffs' Counsel Threatens to Sue, and the District's General Counsel Responds ............................................................ 10

III.    SUMMARY JUDGMENT STANDARD .................................... 12

IV.     PLAINTIFFS CANNOT PRODUCE EVIDENCE SUFFICIENT TO SUPPORT A PRIMA FACIE CLAIM FOR FIRST AMENDMENT RETALIATION AGAINST THE BOARD MEMBER DEFENDANTS . 13

V.      EVEN IF THERE WERE A TRIABLE ISSUE OF FACT AS TO ANY OF THE BOARD MEMBER DEFENDANTS' PARTICIPATION IN THE CANCELATION DECISION, LEGITIMATE GOVERNMENTAL INTERESTS OUTWEIGH PLAINTIFFS' FIRST AMENDMENT HARM ........................................................ 15

VII.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY, BECAUSE A REASONABLE PUBLIC SCHOOL ADMINISTRATOR IN DEFENDANTS' POSITION COULD HAVE BELIEVED THAT IT WAS LEGAL TO CANCEL THE RILEY'S FARM FIELD TRIPS IN RESPONSE TO PARENT COMPLAINTS ..... 18

VIII.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES ......... 21

IX.     CONCLUSION ................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Alpha Energy Savers, Inc. v. Hansen* (9th Cir. 2004) 381 F.3d 917 ................... 15

*Anderson v. Creighton* (1987) 483 U.S. 635 ....................................................... 19

*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242 ........................................ 12

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 .......................................................... 13, 14

*Awabdy v. City of Adelanto* (9th Cir. 2004) 368 F.3d 1062 ............................... 15

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 .................................................... 12

*Crumpton v. Gates* (9th Cir. 1991) 947 F.2d 1418 ............................................. 13

*Dang v. Cross* (9th Cir. 2005) 422 F.3d 800 ...................................................... 21

*Desyllas v. Bernstine* (9th Cir. 2003) 351 F.3d 934 ........................................... 18

*Fogel v. Collins* (9th Cir. 2008) 531 F.3d 8 ....................................................... 19

*Hope v. Pelzer* (2002) 536 U.S. 730 ................................................................... 19

*Melzer v. Board of Education* (2d Cir. 2003) 336 F.3d 185 ........................... 19, 20

*Monteilh v. County of Los Angeles* (C.D. Cal. 2011) 820 F.Supp.2d 1081 ........ 18

*Mullenix v. Luna* (2015) __ U.S.__, 136 S.Ct. 305 ............................................ 19

*O'Hare Trucking Service, Inc. v. City of Northlake* (1996) 518 U.S. 712 .... 16, 17

*OSU Student Alliance v. Ray* (9th Cir. 2012) 699 F.3d 1053 .............................. 13

*Pickering v. Board of Education* (1968) 391 U.S. 563 ....................................... 15

*Saucier v. Katz* (2001) 533 U.S. 194 .................................................................. 18

*Sloman v. Tadlock* (9th Cir. 1994) 21 F.3d 462 .................................................. 15

**Statutes**

42 U.S.C. section 1983 ......................................................................................... 13

CUSD Board Policy 0415 ..................................................................................... 18

**Other Authorities**

9th Cir. Model Jury Instruction 9.9 ...................................................................... 15

**Rules**

F.R.C.P. 56 ............................................................................................................ 12

3

Defendants Beth Bingham, Hilary LaConte, Steven Llanusa, David Nemer, and Nancy Treser Osgood (collectively, the "Board member defendants") respectfully submit the following points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment or, in the alternative, partial summary judgment:

## I.   **INTRODUCTION**

After numerous parents lodged complaints with teachers, principals, and a member of the Board of Education, Claremont Unified School District teachers and administrators decided to cancel their field trips to Riley's American Heritage Farms. Plaintiffs allege that this decision was unconstitutional because the parents' complaints arose in response to James Patrick Riley's private political speech on his own personal social media accounts.

Significantly, however, none of the Board member defendants played any role whatsoever in the decision to cancel Riley's Farm field trips. Indeed, four of the five Board members had no connection to the District's decision at all. The fifth Board member, David Nemer, received concerns about Riley's Farm field trips from parents and community members on social media, but all he did was pass the information along to the Superintendent. Nemer did not direct, order, or even request the cancelation of field trips – he left that up to the administrators and teachers to decide. Thus, because plaintiffs cannot produce any evidence showing that any of the Board member defendants intentionally retaliated against plaintiffs in violation of the First Amendment, the Board member defendants are entitled to judgment as a matter of law.

Furthermore, even if there were a triable issue of fact as to any of the Board members' participation in the cancelation decision, plaintiffs' First Amendment interests are outweighed by CUSD's interest, as a contractor, to ensure that its scholastic activities run efficiently, safely, and to the satisfaction of the students and parents (the District's de facto customers). Finally, even if the Court finds that there

4

is a dispute of fact as to the balancing of interests, defendants are entitled to qualified immunity, because there was no clearly established law in 2018 informing defendants that it was unconstitutional for them to cancel field trips to which parents objected. For all of these reasons, and as further detailed herein, defendants respectfully request that the Court enter summary judgment. Alternatively, defendants request that the Court summarily adjudicate individual claims, defenses, and/or issues.

## II.   SUMMARY OF UNDISPUTED MATERIAL FACTS

### A.   The Parties

Claremont Unified School District ("CUSD" or "District") is a public K-12 school district located in Los Angeles County. (SUF No. 1.) CUSD is governed by a publicly-elected, five-member Board of Education (the "Board"), in accordance with the California Education Code. (SUF No. 2.) At all relevant times, the members of the Board were defendants Beth Bingham, Hilary LaConte, Steven Llanusa, David Nemer, and Nancy Treser Osgood. (See SUF Nos. 3-7.)

Defendant James Elsasser is employed by CUSD as Superintendent of Schools. (SUF No. 8.) Defendant Ann O'Connor is employed by CUSD as Principal of Chaparral Elementary School. (SUF No. 9.) Defendant Brenda Hamlett is employed by CUSD as Principal of Sumner-Danbury Elementary School. (SUF No. 10.)

Plaintiff James Patrick Riley is a principal shareholder of plaintiff Riley's American Heritage Farms ("Riley's Farm"). (SUF No. 11.) Riley's Farm operates an agritourism business in San Bernardino County, which includes historical reenactment tours. (SUF No. 12.) Riley's Farm markets its historical reenactment tours to public and private schools throughout Southern California as a venue for student field trips. (SUF No. 13.)

### B.   Background on CUSD Field Trips

Plaintiffs allege that, in each school year between 2001 and 2017, students from various schools within the District attended field trips at Riley's Farm. On August 16, 2018, the Board approved a list of vendors for the 2018-2019 school year, which

included Riley's Farm. (SUF No. 14.) District schools were then permitted to choose from among the approved vendors, with each school site booking its own field trips. (SUF No. 15.)

District field trips are arranged and funded through the Parent Faculty Associations at each school site. (SUF No. 16.) Hence, parental input on field trip venue choice has tremendous weight. Moreover, parents have a constitutional and statutory right to be active participants in the education of their children, and this right is reflected in the District's policy encouraging parent input and participation.

**C.    James Patrick Riley's Online Posts Lead to a Controversy Online**

On August 30, 2018, certain social media posts from James Patrick Riley's social media accounts went viral. (SUF No. 17.) That day, a person called Elizabeth Adams posted a compilation of Riley's social media posts on her own Facebook page, encouraging others to consider boycotting Riley's Farm as a result of Riley's politically incorrect musings. (SUF No. 18.)

Some examples of Riley's social media posts that drew the public's ire included:

- "What is this country coming to if a girl can't even use her bosoms to smack customers and then sue the president for unwanted sexual advances?" (A reference to pornographic actress and adult entertainer Stormy Daniels' allegations of an extramarital sexual relationship with Donald Trump);

- "When #ElizabethWarren comes on @MSNBC, it's therapeutic to issue a very earthy Cherokee war chant ('hey-ah-hey-ah..etc) I'm doing it right now. I'm running around; I'm treating the various desk lamps like mesquite campfires. You can probably hear it in Oklahoma. #ScotusPick" (A reference to Massachusetts Senator Elizabeth Warren's claim of Native American heritage);

///

- "So I'm planning a high school reunion and I just realized we may have been the last generation born with only two genders." (A reference to transgenderism and gender identity);
- "#NameThatObamaNetflixShow 'Missing ISIS' Heartwarming story of a former Jihad fighter, now readjusting to life as a BLM protester." (A comparison between the Black Lives Matter movement and the ISIS terrorist organization);
- "#Disappointmentin4Words We honor EBT Cards" (A reference to persons receiving welfare);
- "Isn't it strange how #Teachers are considered the most noble people in the world until it comes time to consider arming them? Then they become all sorta sketchy? #JoinTheNRA" (Advocating teachers carrying firearms in the classroom);
- "White supremacy? You mean those 3 guys who live in two different counties in Arkansas? If there's a problem in American today, it's BLACK supremacy. Farrakhan, Obama, Lebron James, etc. Typical brain dead feminist.." (Making light of white supremacy and instead focusing on the perceived threat of black supremacy); and
- "I believe they are going to call this 'Play Hookie and be a P*ssy' Day." (In response to news of student protests in response to the school shooting in Parkland, Florida).

(See SUF Nos. 19-26.) According to news reports, Elizabeth Adams' initial post regarding Riley's tweets was shared by at least 1300 other Facebook users within the next few days. (See Request for Judicial Notice, Exh. F.)

**D.   Parents Complain to CUSD about Riley's Farm Field Trips**

Later on August 30, 2018 (the same day that Elizabeth Adams posted about Riley's tweets), a parent of a Kindergarten student at Chaparral Elementary School sent an email to Chaparral Kindergarten teacher Michelle Wayson, expressing the

parent's concern over the tweets. (SUF No. 27.) The parent's email included screen shots of the tweets themselves, as well as screenshots from Riley's blog site, where Riley had composed an essay entitled "Jim Crow for White Daddies." (O'Connor Decl., Exh. E.)

In the body of her email, the parent wrote:

> I am writing to ask you for a bit more information about the upcoming field trip to Riley's Apple Farm. … As you know, my son… is black; and I do NOT feel comfortable with my son patronizing an establishment whose owner (and/or family/employees) might be inclined to direct bigoted opinions towards my child or other vulnerable children in the group. … Would it be possible to have the field trip moved to another Oak Glen apple farm, like Annie's Apples or another establishment? If not, will [the student's] grade be negatively affected if we opt to not allow him to participate in the field trip?

(*Ibid.*)

Wayson immediately shared the parent's email with Chaparral Principal Ann O'Connor. (SUF No. 28.) Wayson informed O'Connor that all four of Chaparral's Kindergarten classes were planning to attend a joint field trip to Riley's Farm for an apple picking tour on October 17, 2018. (SUF No. 29.) O'Connor assisted Wayson in preparing a response to the parent's email, assuring the parent that Chaparral took her concerns seriously and would look into the matter right away. (SUF No. 30.) O'Connor then asked Wayson to discuss the parent's concerns with the other three Chaparral Kindergarten teachers and determine whether alternative field trip venues would be more appropriate for the joint Kindergarten class field trip. (SUF No. 31.)

Meanwhile, Sumner Danbury Elementary School Principal Brenda Hamlett received verbal communications from multiple parents of Sumner Danbury students, expressing similar concerns regarding Sumner Danbury's field trip to Riley's Farm. (SUF No. 32.) These parents communicated to Hamlett their desire that their children be excused from attending Riley's Farm field trips and/or that their children's classes choose an alternative field trip venue. (SUF No. 33.)

On or about September 2, 2018, Lee Kane, a District resident whose children attended CUSD schools, shared Elizabeth Adams' Facebook post to District Board member David Nemer, asking whether the District sent field trips to Riley's Farm and expressing concerns regarding such field trips in light of the public controversy surrounding Riley's tweets. (SUF No. 34.) Other District residents and/or parents also commented on that post, expressing similar concerns. (SUF No. 35.)

On September 2, 2018, Nemer emailed CUSD Superintendent James Elsasser to notify him of the Facebook post by Elizabeth Adams and the concern it was apparently causing among District parents and residents. (SUF No. 36.) The purpose of Nemer's email was to make Elsasser aware of the controversy in anticipation that parents might approach him regarding the controversy when he returned to the office on September 4, 2018. (SUF No. 37.) Elsasser responded that he would discuss the parents' concerns with his Executive Cabinet on September 4. (SUF No. 38.)

At no time, did David Nemer direct, order, or request James Elsasser or any other CUSD teacher, staff, or administrator to take any action in response to the apparent controversy over James Patrick Riley and Riley's Farm. (SUF Nos. 91-93.)

**E.     CUSD Schools Cancel Riley's Farm Field Trips in Response to Parent Complaints**

On the morning of September 4, 2018, Elsasser met with his Executive Cabinet to discuss – among other topics – parent concerns regarding field trips to Riley's Farm. (SUF No. 39.) Later the same day, the K-12 administrators for all of CUSD met for a regularly-scheduled meeting. (SUF No. 40.) Among other topics, one of the matters discussed in this K-12 administrators' meeting were parent concerns that many of the administrators had been made aware of regarding field trips to Riley's Farm. (SUF No. 41.) Elsasser asked each of the school site administrators to speak with their teachers and determine whether any of them maintained a desire to attend field trips to Riley's Farm. (SUF No. 42.)

///

Based on the parent concerns expressed in the August 30, 2018, email received by Wayson, as well as the other parent concerns reported by K-12 administrators at the September 4 meeting, O'Connor emailed all four Chaparral Kindergarten teachers on September 4, 2018, instructing them that "[w]e need to find another alternative," i.e., a different field trip venue that does not cause concerns from parents. (SUF No. 43.)

By September 10 – six days after Elsasser had instructed the K-12 administrators to ask their staff whether they maintained an interest in attending Riley's Farm field trips – no administrator, teacher, or staff member expressed to Elsasser a desire to continue going to Riley's Farm. (SUF No. 44.) Since there was apparently no interest in going to Riley's Farm, CUSD Assistant Superintendent for Educational Services Julie Olesniewicz sent the following email on September 10, 2018, to the principals of each of the CUSD elementary schools:

> We discussed Riley's Farm today in Cabinet. We have researched as much as we possibly can, and the only farm in Oak Glen that we can directly link to James Patrick Riley is the actual Riley's Farm. There are many other farms up there that are owned and run by other members of the Riley family, but don't seen to be linked to him. Therefore, we are asking that no CUSD school attend Riley's Farm field trips. However, other farms such as Los Rios Rancho and Stone Soup Farm should be fine as it does not appear that James Patrick Riley is involved in those farms.

(SUF No. 45.)

### F.   Plaintiffs' Counsel Threatens to Sue, and the District's General Counsel Responds

On September 24, 2018, Thomas Eastmond, counsel for Riley's Farm and Riley, sent a letter to the District, threatening civil litigation if the District did not immediately agree to his clients' settlement demands, which included: (1) reinstatement of all District field trips to Riley's Farm; (2) issuance of an apology letter; (3) adoption of a formal policy barring District personnel from retaliating

against independent contractors for their free speech; and (4) reimbursement of all legal fees incurred by Riley's Farm. (SUF No. 46.)

Eastmond's letter was referred to the District's general counsel, Cathie Fields of the law firm Atkinson, Andelson, Loya Ruud & Romo. (SUF No. 47.) On October 2, 2018, Fields sent a letter to Eastmond, in which she expressed strong disagreement with the factual and legal assertions in Eastmond's September 24, 2018, letter. (SUF No. 48.) Fields explained: "The District's purpose in conducting field trips is to provide educational experiences for students, not to expose them to inappropriate sexist or racist attitudes." (Modafferi Decl., Exh. H.) Fields then posited that Riley had no constitutional right to dictate to the District the content of its curriculum. (*Ibid.*) Finally, Fields rejected Eastmond's settlement demands. (*Ibid*.)

None of the five Board members participated in any decision regarding whether or not any CUSD school site should attend field trips to Riley's Farm (SUF Nos. 81-85), nor did any of the five Board members attempt to influence any decision by CUSD teachers, staff, or administrators regarding whether or not to attend field trips to Riley's Farm. (SUF Nos. 86-90.) Moreover, none of the five Board members took any part in CUSD's consideration of, or response to, Eastmond's September 24, 2018, letter. (SUF Nos. 64-73.) In particular, none of the five Board members took any part in the preparation of Fields' October 2, 2018, letter in response to Eastmond. (SUF Nos. 74-78.) Indeed, the Board of Education did not even meet in either open or closed session between September 24, 2018, when Mr. Eastmond sent his letter, and October 2, 2018, when Ms. Fields sent her response. (SUF Nos. 79-80.) Because, by law, Board consideration of such matters can *only* happen via a formal, noticed meeting of the Board, it would therefore have been impossible for any of the Board members to have taken part in the District's response to Eastmond's letter.

Ten days later, on October 12, 2018, plaintiffs filed their civil complaint in this action, alleging causes of action for First Amendment retaliation, conspiracy to retaliate in violation of the First Amendment, and injunctive relief.

## III.   <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment serves to isolate and dispose of factually unsupported claims. (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323-324.) Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (F.R.C.P. 56(c); *Celotex Corp. v. Catrett, supra*, 477 U.S. at p. 322.) The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which the nonmoving party has the burden of proof. (*Id.* at pp. 322-23.) A party opposing summary judgment may not rest upon mere allegations or denials of pleadings, but must set forth specific facts showing that there is a genuine issue for trial. (*Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.) A party may move for summary judgment as to individual parts of a complaint or a part of a claim or defense in the pleadings. (F.R.C.P. 56(a).)

The moving party may satisfy its initial burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of its claim on which that party will bear the burden of proof at trial. (*Celotex Corp. v. Catrett, supra,* 477 U.S. at pp. 322-23.) If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." (*Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at p. 256.) A fact is material only if proof of that fact would establish or refute one of the elements of a claim or affirmative defense at issue, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. (*Ibid.*)

///

///

## IV. <u>PLAINTIFFS CANNOT PRODUCE EVIDENCE SUFFICIENT TO SUPPORT A PRIMA FACIE CLAIM FOR FIRST AMENDMENT RETALIATION AGAINST THE BOARD MEMBER DEFENDANTS</u>

Plaintiffs' operative, first amended complaint alleges three causes of action, all of which are brought pursuant to 42 U.S.C. section 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

Thus, according to the Ninth Circuit, "the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." (*Crumpton v. Gates* (9th Cir. 1991) 947 F.2d 1418, 1420.)

Plaintiffs' claims of First Amendment retaliation against the Board member defendants fail as a matter of law, because plaintiffs cannot produce evidence of any conduct by any of the Board member defendants which proximately caused a violation of plaintiffs' constitutional rights. The Supreme Court held in *Ashcroft v. Iqbal* (2009) 556 U.S. 662, that "each government official, his or her title notwithstanding, is only liable for his or her own misconduct." (*Id*. at p. 677.) A defendant cannot be held vicariously liable under Section 1983 for the constitutional torts of any other person, including the defendant's subordinates. (*Id*. at p. 676.) Rather, a defendant can only be liable if he has personally violated the constitution. (*Ibid*.)

Following *Iqbal*, the Ninth Circuit has held that "a constitutional tort plaintiff must [prove] that every government defendant – supervisor or subordinate – acted with the state of mind required by the underlying constitutional provision." (*OSU Student Alliance v. Ray* (9th Cir. 2012) 699 F.3d 1053, 1070.) "Where the claim is

5:18-cv-02185-JGB-SHK

invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." (*Ashcroft v. Iqbal*, *supra*, 556 U.S. at p. 676.) Therefore, unless plaintiffs can produce admissible evidence sufficient to prove that each of the Board member defendants personally, and with a discriminatory purpose, participated in the act of retaliating against plaintiffs for their free speech, summary judgment must be granted. To hold otherwise would subject the Board member defendants to vicarious liability for the allegedly unconstitutional acts of others, which is not permitted.

The evidence is irrefutable that Beth Bingham, Hilary LaConte, Steven Llanusa, and Nancy Treser Osgood played no part whatsoever in the cancelation of Riley's Farm field trips. They did not receive parent complaints. They did not discuss James Patrick Riley or Riley's Farm with anyone at CUSD. They did not participate in any decision regarding whether or not any CUSD school site should attend field trips to Riley's Farm. They did not attempt to influence any decision by CUSD teachers, staff, or administrators regarding whether or not to attend field trips to Riley's Farm. They did not take any part in CUSD's consideration of, or response to, Eastmond's September 24, 2018, letter. They did not take any part in the preparation of Fields' October 2, 2018, letter in response to Eastmond. There isn't even any evidence that any of them was ever even aware there was a controversy with regard to Riley's Farm. These four defendants have been named in this lawsuit solely because they are Board members. To hold them liable for decisions that they did not make, participate in, or even know about would be tantamount to respondeat superior liability, which is clearly impermissible. Therefore, Bingham, LaConte, Llanusa, and Treser Osgood must be granted summary judgment.

The factual case against Nemer is only slightly less frivolous. Nemer's only involvement in the Riley's Farm controversy was that he (an elected official) received communications from his constituents and passed them on to the District's Chief

Executive, Elsasser. In passing the communications along, Nemer did not issue any concomitant directive or request that any action be taken in response – he simply forwarded the information. Like the other Board members, Nemer did not participate in any decision regarding whether or not any CUSD school site should attend field trips to Riley's Farm. He did not attempt to influence any decision by CUSD teachers, staff, or administrators regarding whether or not to attend field trips to Riley's Farm. He did not take any part in CUSD's consideration of, or response to, Eastmond's September 24, 2018, letter. And he did not take any part in the preparation of Fields' October 2, 2018, letter in response to Eastmond.

Plaintiffs can present no evidence that Nemer took any adverse action toward them, let alone that Nemer was substantially motivated by a desire to deter or chill the plaintiffs' speech. (See *Awabdy v. City of Adelanto* (9th Cir. 2004) 368 F.3d 1062, 1071; see also *Sloman v. Tadlock* (9th Cir. 1994) 21 F.3d 462, 1465, n. 10; see also 9th Cir. Model Jury Instruction 9.9.) Therefore, Nemer, too, is entitled to judgment as a matter of law.

## V.  EVEN IF THERE WERE A TRIABLE ISSUE OF FACT AS TO ANY OF THE BOARD MEMBER DEFENDANTS' PARTICIPATION IN THE CANCELATION DECISION, LEGITIMATE GOVERNMENTAL INTERESTS OUTWEIGH PLAINTIFFS' FIRST AMENDMENT HARM

Even if plaintiffs could produce evidence sufficient to a trial issue of material fact with regard to any of the Board member defendants' participation in the cancelation of Riley's Farm field trips, defendants are entitled to judgment as a matter of law if the Court determines that, under the balancing test articulated in *Pickering v. Board of Education* (1968) 391 U.S. 563, legitimate governmental interests in promoting efficient services outweigh the plaintiffs' free speech interests. (*Alpha Energy Savers, Inc. v. Hansen* (9th Cir. 2004) 381 F.3d 917, 923.) At the motion to dismiss stage, the Court held that *Pickering* balancing was inapplicable to plaintiffs'

15

retaliation claims in this case, because plaintiffs' provision of field trip services to CUSD does not fall within the category of services traditionally provided by the government, and therefore, plaintiffs were entitled to increased protection from retaliation, similar to that of private citizens. (See ECF No. 34.) With the factual record now developed, defendants urge the Court to revisit this determination for two key reasons.

First, assuming the relevant test is whether the contractor provides services traditionally performed by government, the hosting of public school field trips certainly falls within this category. A field trip is an extension of the classroom, allowing students to gain a broader perspective on the lessons their teachers teach them during regular school days. For example, Riley's Farm's Revolutionary War Adventure program is typically visited by fifth graders, in conjunction with their study of American History. Teaching students history (whether through books in the classroom or through live historical reenactments) is precisely the type of governmental service that public schools exist to provide. The fact that they contract that responsibility out to Riley's Farm for one day out of the year does not render Riley's Farm any less a provider of a traditional governmental service. Certainly, the service provided by Riley's Farm is closer to the core purpose of CUSD than a contract for towing services was to the city in *O'Hare Trucking Service, Inc. v. City of Northlake* (1996) 518 U.S. 712.

Second, defendants do not agree that the nature of the service provided by the contractor should be determinative in deciding whether or not *Pickering* balancing should apply. Rather, the core inquiry is whether the allegedly retaliatory act constitutes the termination of a contractual relationship or the exercise of sovereign power to the detriment of the plaintiff. This is illustrated by the fact that the courts have included prospective contractors under the balancing analysis – their injury is the refusal of the contract, not some unrelated punishment meted out by the government in its capacity as sovereign.

16

It is also notable that the Supreme Court in *O'Hare* viewed its ruling as an extension of *protection* to contractors. Were it not for *O'Hare* and its progeny, independent contractors would not have been treated as "private citizens" and thereby given a higher degree of First Amendment protection for the retaliatory termination of their contract – they would have received no protection at all. The same is true for prospective contractors in circuits that have not extended the balancing analysis to them: if the government refuses them a contract in retaliation for their speech, there is no First Amendment harm whatsoever.

In this case, the allegedly unconstitutional action on the part of defendants was the termination of the contractual relationship between Riley's Farm and CUSD. There is no evidence – indeed, no allegation – that any of the defendants attempted to exert CUSD's sovereign authority to regulate Riley's speech or otherwise punish plaintiffs by some means other than the termination of the contract. Therefore, the Court must weigh the constitutional harm arising from the termination of the contract against CUSD's legitimate interests, as contractor, in providing efficient educational services.

The scale tips heavily in favor of defendants due to their legitimate interest in designing curricular programs that meet with parent approval, rather than complaints from parents. The parent of a Black Kindergartner complained that she did not feel her son would be in a safe environment at Riley's Farm. Numerous other parents complained verbally and on social media – to principals and even one member of the Board. Furthermore, parents literally control the purse strings on field trips, which are funded through the Parent Faculty Associations.

According to defendants' expert, Victor P. Hayek, it is consistent with standard practices in public education for public school administrators, such as defendants, to exercise discretion in selecting venues for field trips using input from parents/guardians. (SUF No. 56.) Indeed, given CUSD's commitment to equitable access, support services, and opportunities for success in a positive school climate

17

(see Board Policy 0415), it is Dr. Hayek's opinion that emails and other communications from parents who are concerned about a school activity should cause school and District administrators to evaluate their choice of program(s).

The loss of CUSD's business no doubt causes some measure of harm to plaintiffs. However, that harm is of no greater character than the harm that plaintiffs would incur if a private school canceled field trips in response to parent complaints. Clearly, public school administrators' interest in choosing programs that are safe, effective, and consistent with parental demands outweighs the minimal harm to plaintiffs.

**VII. <u>DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY, BECAUSE A REASONABLE PUBLIC SCHOOL ADMINISTRATOR IN DEFENDANTS' POSITION COULD HAVE BELIEVED THAT IT WAS LEGAL TO CANCEL THE RILEY'S FARM FIELD TRIPS IN RESPONSE TO PARENT COMPLAINTS</u>**

Even if plaintiffs could produce evidence sufficient to support a prima facie claim for First Amendment retaliation, and their First Amendment injury were not outweighed by legitimate governmental interests, defendants are entitled to qualified immunity. "Qualified immunity shields public officials sued in their individual capacity for monetary damages, unless their conduct violates 'clearly established' law that a reasonable public official would have known." (*Monteilh v. County of Los Angeles* (C.D. Cal. 2011) 820 F.Supp.2d 1081, 1087.) The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against a public employee for an alleged violation of a constitutional right. (*Saucier v. Katz* (2001) 533 U.S. 194, 201.) Under *Saucier*, courts "must examine first whether the officers violated plaintiff's constitutional rights on the facts alleged and, second, if there was a violation, whether the constitutional rights were clearly established." (*Desyllas v. Bernstine* (9th Cir. 2003) 351 F.3d 934, 939.) ///

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (*Anderson v. Creighton* (1987) 483 U.S. 635, 640.) There must be "some parallel or comparable fact pattern to alert an officer that a series of actions would violate an existing constitutional right." (*Fogel v. Collins* (9th Cir. 2008) 531 F.3d 824, 833.) If public employees of reasonable competence could disagree on the issue, immunity should be recognized. (*Hope v. Pelzer* (2002) 536 U.S. 730, 741.) "We do not require a case directly on point, but *existing precedent* must have placed the statutory or constitutional question *beyond debate*. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (*Mullenix v. Luna* (2015) __ U.S.__, 136 S.Ct. 305, 308 (emphasis added).)

There simply was no existing precedent at the time CUSD canceled its Riley's Farm field trips which would have placed defendants on notice that they were constitutionally prohibited from canceling field trips in response to parent complaints. Rather, the overwhelming weight of the case law favors discretion for public school administrators.

As discussed above, there is extensive case law in the government speech arena establishing that schools have plenary authority over their curricula, and that curricular choices are not justiciable. Certainly, none of those cases would have forewarned defendants that they would run afoul of the First Amendment by canceling field trips in response to parent complaints.

The Second Circuit's decision in *Melzer v. Board of Education* (2d Cir. 2003) 336 F.3d 185 did not provide any such notice to defendants, either. The plaintiff in *Melzer* was a high school science teacher with over 30 years' tenure. Despite his decades of effectively teaching science to grades 9 through 12, the plaintiff was suspended and ultimately terminated after students' parents learned that the teacher was a member of the North American Man/Boy Love Association ("NAMBLA"). (*Id.* at p. 189.) The record showed no evidence that the teacher ever engaged in any illegal

or inappropriate conduct with students or that the actual content of his science curriculum reflected his views on pedophilia. (*Ibid*.) Nevertheless, the school terminated the teacher based on his political affiliation and the resulting uproar from parents of students.

The Second Circuit observed that the teacher's First Amendment rights of association and speech are not "on a different constitutional value scale than other types of First Amendment rights more widely accepted by society." (*Id.* at p. 197.) Nevertheless, the court noted that the plaintiff's position as a public school teacher merited special consideration in balancing the opposing interests at stake:

> [W]e note that we conduct our evaluation of appellant's rights versus governmental interest bearing in mind his position as a teacher in a public school. ***This position by its very nature requires a degree of public trust not found in many other positions of public employment.*** Although we recognize the danger in allowing the government to take action against an employee for his off-duty affiliations, in the context of teaching schoolchildren Melzer's activities strike such a sensitive chord that, despite the protection afforded his activities, the disruption they cause is great enough to warrant the school's action against him.

(*Id.* at p. 198 (emphasis added).)

Based on all of these considerations, the court held that the actual or potential disruptions to school activities as a result of the teacher's political affiliation outweighed his constitutional interests:

> Parents so concerned may remove their children from the school, thereby interrupting the children's education, impairing the school's reputation, and impairing educationally desirable interdependency and cooperation among parents, teachers, and administrators.

(*Id.* at p. 199.) The court therefore affirmed the judgment in favor of the school.

According to Victor Hayek, CUSD's choice to cancel its Riley's Farm field trips was consistent with standard practices in public education to ensure that student programs are consistent with and do not disrupt the District's educational mission. (SUF Nos. 58-60.) Furthermore, Dr. Hayek – himself a credentialed public school

20

administrator – believes that a reasonable California public school administrator in any of the defendants' position would have believed that it was within their lawful authority to choose an alternative field trip venue in response to parents'/guardians' and community members' concerns. (SUF No. 62.)

Finally, qualified immunity is clearly supported by the fact that administrators at several other public school districts made similar decisions to cancel field trips in response to parent complaints over Riley's tweets. Unless the Court believes that public school administrators throughout Southern California were all unreasonably canceled their field trips despite actual or constructive knowledge that the cancelation constituted a clearly established violation of the First Amendment, then there can be no other conclusion than that defendants are entitled to qualified immunity.

## VIII.  <u>PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES</u>

Finally, plaintiffs' operative complaint contains a prayer for punitive damages against the administrator defendants. To obtain punitive damages, a plaintiff must prove that a defendant's actions were malicious, oppressive, or in reckless disregard of the plaintiff's rights. (*Dang v. Cross* (9th Cir. 2005) 422 F.3d 800, 810.) Here, there is no evidence of malice, oppression, or reckless disregard toward plaintiffs on the part of any of the Board member defendants. Indeed, the only conduct by any of the Board member defendants which even remotely approaches culpable conduct by was David Nemer's forwarding of parent complaints to the Superintendent. Neither Nemer nor any of the other Board member defendants engaged in conduct which a reasonable juror could consider malicious or oppressive. Therefore, plaintiffs' claim for punitive damages against the Board member defendants must be dismissed.

## IX.  <u>CONCLUSION</u>

None of the Board member defendants played any role whatsoever in the decision to cancel field trips to Riley's Farm. Therefore, the Board member defendants are entitled to judgment as a matter of law with regard to plaintiffs' First Amendment retaliation claims. Alternatively, no clearly established law placed the

1   Board member defendants on notice that CUSD's choice of a field trip venue had

2   Constitutional implications. For all of these reasons, defendants respectfully request

3   that the court grant summary judgment or, in the alternative, partial summary

4   judgment.

5   Dated: June 8, 2020                          Meyers Fozi & Dwork, LLP

6

7                                        By:   /s/ Daniel S. Modafferi

8                                              Golnar J. Fozi
                                               Daniel S. Modafferi
9                                              Attorneys for Defendants,
                                               James Elsasser, Steven Llanusa, Hilary
10                                             LaConte, Beth Bingham, Nancy Treser
                                               Osgood, David Nemer, Ann O'Connor,
11                                             and Brenda Hamlett

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28